UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| MEGAN GREEN, | ) |  |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | Cause No.: 4:18-CV-01629 JCH |
| CITY OF SAINT LOUIS, MISSOURI, et al. | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the Motion of Defendant, the City of Saint Louis Missouri, to dismiss or in the alternative to strike the Plaintiff's Amended Complaint filed February 14, 2019. (ECF No. 24). The matter is fully briefed and ready for disposition.

## BACKGROUND[1]

On September 15, 2017, the Circuit Court of the City of St. Louis issued its findings and verdict in *Stockley*, prompting some members of the public to engage in protest activity around the St. Louis metropolitan area including within the City of St. Louis. (ECF No. 21, ¶¶ 12-17). The Protests concerned the verdict itself and broader issues including racism in the criminal justice system and the use of force by police officers against African-American citizens. *Id.* ¶¶ 18-20. Most of the protests were non-violent. *Id.* ¶ 23. "In response to the protests, St. Louis Metropolitan police officers amassed at several protests wearing military-like tactical dress, helmets, batons, and full-body riot shields and carrying chemical agents. *Id.* ¶ 21.

---

[1] The facts set out here are taken from the allegations in Plaintiff's Amended Complaint. They are taken as true for the purposes of this Memorandum. Defendants have not yet filed an answer.

1

At approximately 7:00 PM on September 15, 2017, Plaintiff went to the Central West End neighborhood of St. Louis city to protest the Stockley acquittal. *Id.* ¶ 37. Plaintiff has been an active protester for the Black Lives Matter Movement since 2014. *Id.* ¶ 38. Plaintiff participated in a march that started in the Central West End. *Id.* ¶ 39. Following the march she observed buses of riot police officers on Lake Avenue. *Id.* She also observed SLMPD officers in riot gear blocking off the intersection at Waterman Boulevard and Lake Avenue. *Id.* ¶¶ 39-40. Plaintiff then entered the Central Reform Congregation, a Synagogue near the intersection to avoid tear gas between 9:30 PM and 10:00 PM. *Id.* ¶ 42. Plaintiff asserts that approximately 100-150 people also sought refuge in the Synagogue, and that while inside, she could hear SLMPD officers banging on the door and yelling. *Id.* ¶¶ 43-44. Plaintiff asserts that the Synagogue was surrounded by SLMPD officers which caused Plaintiff and others to remain in the Synagogue for approximately an hour. *Id.* ¶ 45. Later, Plaintiff and approximately ten other protesters exited the Synagogue. *Id.* ¶ 47. Plaintiff decided to go home so she attempted to reach her vehicle to leave. *Id.* To reach her vehicle, located on Euclid and Laclede, Plaintiff, along with other individuals, walked south on Kingshighway. *Id.* ¶¶ 47-49. They were approached by a line of SLMPD officers. *Id.* ¶ 48. Plaintiff sough permission to cross the line of police to reach her vehicle. *Id.* ¶ 49. The police granted Plaintiff and others to cross the line. *Id.* ¶ 50. Plaintiff asserts that as she crossed the police line, they began to make mocking statements toward her. *Id.* ¶ 51. Before reaching her vehicle, Plaintiff saw an armored SLMPD truck speed toward where she and others were walking. *Id.* ¶ 53. Plaintiff yelled for those with her to take cover. *Id.* ¶ 54. The armored truck passed Plaintiff once without incident. *Id.* ¶ 56. Plaintiff and others quickly crossed Lindell to get to their vehicles. *Id.* ¶ 57. The SLMPD truck then made a U-Turn and returned to Plaintiff's location and the SLMPD dispersed tear gas. *Id.* ¶ 58. Plaintiff asserts that she did not hear a warning at the time the tear gas

was being deployed. *Id.* ¶ 59. Plaintiff further asserts that she was not committing any crime, nor was any crime being committed at the time the tear gas was deployed. *Id.* ¶¶ 60-61. Plaintiff asserts that she began to feel excruciating pain; her eyes began to burn, mucus ran from her nose, and her breathing became labored. *Id.* ¶ 62. These reactions persisted for several months. *Id.* Plaintiff asserts that she has suffered from respiratory issued as a result of the tear gassing. *Id.* ¶ 67.

Plaintiff asserts First Amendment (Count I), Conspiracy to Deprive Civil Rights (Count II) and excessive force (VII) against the individual officers pursuant to 42 U.S.C. § 1983. Plaintiff also asserts § 1983 claims against the City (Count III) alleging municipal liability for failure to train and for an unconstitutional policy or custom. Finally, Plaintiff asserts supplemental state-law claims alleging assault (Count IV), battery (Count VIII), and the intentional infliction and negligent infliction of emotional distress (Counts V and VI).

## DISCUSSION

The City moves to dismiss the amended complaint for failure to comply with Fed. R. Civ. P. 8(a) "short and plain statement" requirement and to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). In the alternative, Defendant moves to strike certain paragraphs of the complaint under Fed. R. Civ. P. 12(f) as immaterial or impertinent. Specifically, the City moves to dismiss Plaintiff's §1983 *Monell* and Conspiracy claims under 12(b)(6), asserting that Plaintiff fails to state a cognizable claim for municipal liability based on policy or custom, and is barred from raising a 1983 conspiracy claim against Defendant due to the intracorporate conspiracy doctrine.

### Motion to Dismiss under Fed. R. Civ. P. 8(a) or in the Alternative Motion to Strike

The City moves to dismiss Plaintiff's amended complaint for failure to comply with the "short and plain" statement requirement of Rule 8(a), arguing that the amended complaint contains

inflammatory rhetoric. (ECF No. 27, at 4). Specifically, the City objects to Plaintiff's allegations concerning the *Stockley* verdict, the nature of the public protests in response thereto, the prior orders of this Court concerning SLMPD actions in response to public protests, and the attachment of hearing transcript documentation to the complaint. *Id.*, at 6. Alternatively, the City moves to strike these paragraphs under Fed. R. Civ. P. 12(f) as immaterial or impertinent. *Id.*

As other judges in the District have held with respect to the same challenge in related cases, the Complaint's factual allegations and supporting exhibits, to which the City objects, are relevant to the Plaintiff's municipal liability claim at a minimum. *Laney v. City of St. Louis, Mo.*, No. 4:18 CV 1575 CDP, 2019 WL 2423308, at *3 (E.D. Mo. June 10, 2019); *Altridge v. City of St. Louis, Mo.*, No. 4:18 CV 1677 CAS, 2019 WL 1695982, at *4 (E.D. Mo. Apr. 17, 2019). The Court therefore finds that dismissal under Rule 8(a) or striking under Rule 12(f) is not warranted.

### **Standard for Motion to Dismiss under Fed. R. Civ. P. 12(b)(6)**

In ruling on a motion to dismiss, the Court must view the allegations in the Complaint in the light most favorable to Plaintiff. *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008). The Court "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Coons v. Mineta*, 410 F.3d 1036, 1-39 (8th Cir. 2005)(citation omitted). The complaint's factual allegations must be sufficient "to raise a right to relief above the speculative level," and the motion to dismiss must be granted if the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 520 (2007)(abrogating the "no set of facts" standard for Fed. R. Civ. P. 12(b)(6) found in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Furthermore, "the tenet that a court must accept as true all allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory

4

statements, do not suffice." *Ashcroft v. Iqbal,* 129 1937, 1949 (2009)(citing *Twombly,* 550 U.S. at 555 (pleading offering only "labels and conclusions" or formulaic recitation of the elements of a cause of action" will not do)).

I. **Civil Conspiracy Claim**

"To prove a 42 U.S.C. § 1983 conspiracy claim, a plaintiff must show: (1) that the defendant conspired with others to deprive him of constitutional rights; (2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) that the overt act injured the plaintiff. *White v. McKinley*, 519 F.3d 806, 814 (8th Cir. 2008)(citation omitted). The first element "requires allegations of specific facts tending to show 'meeting of the minds' among the alleged conspirators." *Murray v. Lene*, 595 F.3d 868, 870 (8th Cir. 2010). "The plaintiff is additionally required to prove a deprivation of a constitutional right or privilege in order to prevail on a §1983 civil conspiracy claim." *White*, 519 F.3d at 814.

The city's primary challenge to Plaintiff's §1983 conspiracy claim is that it is barred by the intercorporate conspiracy doctrine. The cases relied upon by the City involved conspiracy claims under 42 U.S.C. §1985. *See Kelly v. City of Omaha,* 813 F.3d 1070, 1078 (8th Cir. 2016). The Eighth Circuit has, however, not addressed whether the doctrine applies to §1983 conpiracy claims, and in the absence of such direction from the Eight Circuit, the judges in this District have consistently declined to extend the doctrines reach, at least at the pleading stage. *See Aldridge*, 2019 WL 1695982, at *8 (collecting cases). The Court finds that it is inappropriate to apply the intracorporate conspiracy doctrine at this stage.

II. ***Monell*** **Claims against the City**

Plaintiff alleges that the following policies, practices, or customs caused the alleged constitutional violations in this case, thereby making the City liable under *Monell*:

5

  a. SLMPD officer's routine use of excessive force when policing protests, especially those at which police brutality is being protested;
  b. SLMPD's policy or custom of issuing vague and even contradictory dispersal orders without giving opportunity to comply;
  c. SLMPD's policy of arbitrarily declaring unlawful assemblies in the presence of any threat or force or violent activity that provides no notice to citizens or unlawful conduct;
  d. Additionally, SLMPD has a custom, policy or practice of violating the Fourth Amendment by regularly conducting unreasonable seizures and arresting individuals without probable cause.

ECF No. 15 ¶ 94. Plaintiff also claims that the City has inadequately trained, supervised, and disciplined SLMPD officers with respect to its officers' use of force. *Id.* at ¶ 95.

  For §1983 liability to attach to the City, Plaintiff must show that a constitutional violation resulted from an official municipal policy, an unofficial custom, or a deliberately indifferent failure to train or supervise. *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). In its motion to dismiss the City argues that Plaintiffs' factual allegations are not sufficient to establish any basis for *Monell* liability.

  **a. Official Policy or Custom**

  Plaintiff's amended complaint plausibly alleges that specific SLMPD policies or customs were the moving force behind the constitutional violations she suffered.[2] Specifically, Plaintiff alleges that a pattern of using chemical agents without warning against peaceful protesters complaining of police actions, including incidents in October and November of 2014, in May and August of 2015, and in July of 2017 as well as additional incidents that followed the *Stockley* verdict on September 15, 2017. Plaintiff also alleges that the City entered into a settlement agreement in March 2015 in *Templeton et al. v. Dotson, et al.*, No. 4:14 CV 2019 C EJ (E.D. Mo.), in which it agreed not to use chemical agents to disperse groups of individuals not engaged in

---

[2] Other judges in this District have similarly held that *Monell* claims were sufficiently stated where similar allegations were made to those raised in this case. *See Aldridge,* 2019 WL 169598, at *9; *Laney*, 2019 WL 2423308, at 5.

criminal activity without first issuing a clear and unambiguous warning that such chemical agents will be used and without ensuring that there is a means of safe egress from the area, among other protections, but that thereafter SLMPD officers continued to use chemical agents against non-violent protesters without adequate warning or opportunity to comply. These factual allegations are sufficient to support the existence of an unconstitutional policy or custom that plausibly caused the constitutional violations alleged here. The City's motion to dismiss Plaintiff's *Monell* claims based on unconstitutional policy or custom will therefore be denied.

### b. Failure to Train or Supervise

To state a claim under §1983 for failure to train or supervise, Plaintiff must plead facts sufficient to demonstrate that, (1) the City's police officer training and supervision practices were inadequate; (2) the City was deliberately indifferent to the rights of others in adopting these practices, such that the City's failure to train and supervise was a result of deliberate or conscious choices; and (3) the City's training and supervision deficiencies caused Plaintiff's constitutional deprivation. *See, Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013)(citation omitted).

In support thereof, Plaintiff has pled, "Defendant City has inadequately trained, supervised, and disciplined SLMPD officers, with respect to its officer's use of kettling and use of force" ECF No. 15 ¶ 95. Such an allegation alone, is insufficient to state a claim. *See Altridge*, 2019 WL 1695982, at *11; *Laney*, 2019 WL 2423308, at *6. Plaintiff has not pled any factual allegations in support of their claim. The Court will therefore grant the City's motion to dismiss Plaintiff's *Monell* claim to the extent that it is based on the City's alleged failure to supervise, train, and discipline SLMPD police officers.

### III. Sovereign Immunity to State Law Claims

"[I]n the absence of an express statutory exception to sovereign immunity, or a recognized common law exception such as the proprietary function and consent exceptions, sovereign immunity is the rule and applies to all suits against public entities[.]" *Metro. St. Louis Sewer Dist. v. City of Bellefontaine Neighbors*, 476 S.W.3d 913, 921-22 (Mo. 2016). Missouri law, however, provides statutory exceptions to sovereign immunity. One such exception occurs when a political subdivision purchases liability insurance to cover certain tort claims, in the amount of and for the purposes covered by the insurance purchase. Mo. Rev. Stat. § 537.610.1; *see also Hammer v. City of Osage Beach*, 318 F.3d 832, 841 (8th Cir. 2003). "[A] plaintiff must specifically plead facts demonstrating that the claim is within this exception to sovereign immunity" by pleading the existence of insurance and that the insurance covers the Plaintiffs' claims. *Epps v. City of Pine Lawn*, 353 F.3d 588, 594 (8th Cir. 2003).

With regards to her state law claims, Plaintiff has pled that the City obtains insurance through the Public Facilities Protection Corporation ("PFPC"), a not for profit corporation into which the city pays funds yearly. (ECF No. 29 ¶ 115). The funds are then dispersed by PFPC to pay claims against the city. *Id.* In the alternative, Plaintiff pleads that the City's relationship with PFPC constitutes a self-insurance plan because, as described in the 2017 Comprehensive Annual Financial Report for the City of St. Louis, "its sole purpose is to provide the City with a defined and funded self-insurance program for claims, judgements, and other related legal matters. (ECF No. 21 ¶ 84). Allegations of PFPC insurance or self-insurance are sufficient at this stage to demonstrate that the Plaintiff's state-law tort claims fall within the exception to sovereign immunity under § 537.610.1. *See Aldridge*, 2019 WL 1695982, at *13; *Laney*, 2019 WL 243308, at 7 *see also Fortenberry v. City of St. Louis,* No. 4:18-CV-01937-JCH, 2019 WL 1242671, at *7

(E.D. Mo. Mar. 18, 2019). The Court will therefore deny the City's motion to dismiss the state-law tort claims on the basis of sovereign immunity.

IV. **Allegedly Duplicative Claims**

The City asserts that Plaintiff cannot state a claim for intentional infliction of emotional distress because she has also pled a claim for assault. This contention is without merit. Under Missouri law, the torts of intentional infliction of emotional distress and negligent infliction of emotional distress are "intended to supplement existing forms of recovery," provided that the elements of the claims are adequately pled. *See Sansonetti v. City of St. Joseph*, 976 S.W.2d 572, 580 (Mo. Ct. App. 1998), *abrogated on other grounds by Delana v. CED Sales, Inc.*, 486 S.W.3d 316 (Mo. 2011). Defendants' Motion to Dismiss does not dispute that Plaintiffs have adequately pled facts in support of these claims. Additionally, "assault and battery are two distinct causes of action." *Devitre v. Orthopedic Ctr. of St. Louis, LLC*, 349 S.W.3d 327, 335 (Mo. 2011). Although Plaintiff may not recover duplicative damages, the Federal Rules of Civil Procedure permit them to plead alternative legal theories. *See,* Fed. R. Civ. P. 8(d). Therefore, the Defendant's Motion to Dismiss will be denied as it pertains to these claims.

V. **Punitive Damages**

Plaintiff cannot recover punitive damages against the City on their state-law claims. *See* Mo. Rev. Stat. § 537.610.3; *city of NewPort v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). Because Plaintiff's claims against Defendant Doe in his official capacities are equivalent to claims against the City, Plaintiff is likewise barred from recovering punitive damages from Defendant Doe in his official capacity. Therefore, the Court will strike Plaintiff's requests for punitive damages on her state law claims against the City and against Defendant Doe in his official capacity only.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss Case and in the Alternative Motion to Strike (ECF No. 24) is **GRANTED in part and DENIED in part**. The motion is **GRANTED** only as to Plaintiff's failure-to-train claim in Count III, (the remainder of Count III survives dismissal). The Court further will **GRANT** the dismissal of Plaintiff's request for punitive damages on the state-law claims against City of St. Louis and against Defendant Doe his official capacity. The motion is otherwise **DENIED**. Plaintiff's remaining causes of action are Count I §1983 violation under the First and Fourteenth amendment; Count VII §1983 violation under the Fourth and Fourteenth Amendment for excessive force; Count II for Conspiracy to Deprive Civil Rights; Count III for municipal liability as it pertains to policy or custom; and Plaintiff's state law claims, Counts IV-VI, VIII.

Dated this day the 3rd of September 2019.

    /s/ Jean C. Hamilton

    JEAN C. HAMILTON
    UNITED STATES DISTRICT JUDGE