UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MEGAN GREEN, ) | |
| ) | |
| Plaintiff, ) | Case No. 4:18-CV-01629-JCH |
| ) | |
| v. ) | JURY TRIAL DEMANDED |
| ) | |
| CITY OF ST. LOUIS, et al. ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM IN SUPPORT OF INDIVIDUAL DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Despite years of investigation, the City of St. Louis is still not able to confirm or deny whether Nicholas Manasco, Lance Coats, Joshua Becherer, Matt Tesreau, Michael Flatley, Joseph Busso, Jon Long, and Timothy Boyce were in the BEAR at the time that SLMPD officers deployed pepper spray at Plaintiff. Plaintiff has repeatedly made efforts to limit the number of defendants in this suit. The City's inability to produce the names of the finite number of officers in the only vehicle firing tear gas canisters during a high-profile event has resulted in these officers being named as defendants. If the City provides a more accurate list, Plaintiff will revise her suit accordingly. [Plaintiff's Second Amended Complaint, ECF 68, ¶70.]

So saying, plaintiff has proceeded to sue individual defendant officers Nicholas Manasco, Lance Coats, Joshua Becherer, Matt Tesreau, Michael Flatley, Joseph Busso, Jon Long, and Timothy Boyce without regard to whether she can prove her case against them or not.  Apparently, plaintiff thinks that liability under 42 U.S.C. §1983 is presumed if the defendants are police officers, and that the City and its officers are obliged to disprove plaintiff's claims--as though police officers coping with a riot should be expected to sign in and sign out of police vehicles.  Thankfully, that is not the law, and these individual defendants urge the Court to dismiss plaintiff's action.

Plaintiff has also sued Cliff Sommer, Bennie Blackmon, Daniel Cora, Joseph Calabro, Lt. Col. Lawrence O'Toole, and Charlene Deeken (acting director of the City's

Department of Public Safety at the time).   For the reasons which follow, all the individual defendants move to dismiss the second amended complaint.

## Facts as Alleged

Stripped of its immaterial and impertinent allegations, the gist of plaintiff's second amended complaint is that she was subjected to tear gas or pepper spray (plaintiff apparently cannot make up her mind on that score) while on a city street, and not during any sort of protest.  Second amended complaint [ECF 68] ¶¶10ff., 75ff. (paragraph references hereinafter are to the second amended complaint unless otherwise noted).   She alleges that she joined some 1,000 persons in the Mayor's residential neighborhood on the night of September 15-16, 2017, protesting the verdict acquitting former St. Louis police officer Jason Stockley of murder.  ¶¶51-52.  Although plaintiff alleges in places that the protest was "peaceful," the Court's findings in *Ahmad v. City of St. Louis,* No. 4:17 CV 2455 CDP, 2017 U.S. Dist. LEXIS 188478 (E.D. Mo. Nov. 15, 2017)--fondly cited by plaintiff--indicate that the nature of the protest was quite the opposite, and that St. Louis police were faced with a near-riot. *Id.,* *7-*8; see also ECF 1-4,  (ex. D to original complaint), pp. 138, 294-95 (Sachs testimony).   In any event, plaintiff alleges that numerous police officers were in the vicinity, and that "after the march," she proceeded to Kingshighway Blvd. where she entered a synagogue to avoid tear gas deployed by police. ¶56.  There is no allegation that the tear gas was directed at her at the time, nor is there any allegation that she personally had any contact with police prior to entering the synagogue.

According to the second amended complaint, plaintiff and ten other persons left the shelter of the synagogue and proceeded unmolested along City streets to try to reach

their parked cars, because "the protests were done." ¶61. She encountered a police line and was allowed to pass through with her companions. There is no allegation that any officer used or threatened the use of force against her at that time. ¶¶63-64. As she and some other persons were proceeding along Lindell Blvd., she observed a police tactical vehicle known as the "BEAR" appear and she yelled to her companions to "take cover." ¶71. The vehicle drove past her and her companions without incident, and plaintiff and her companions then dashed across Lindell." ¶¶73-74. The police vehicle then reversed course. When the vehicle drove past plaintiff the second time, as plaintiff and companions were "quickly crossing" Lindell, the vehicle allegedly discharged tear gas in plaintiff's direction. ¶75. Plaintiff alleges that the tear gas caused her "excruciating pain" and symptoms that lingered, but there is no allegation that she ever obtained medical treatment. ¶79. She avers that shortly after she was gassed or sprayed (see, e.g., ¶20), the police vehicle also discharged tear gas at another group on the other side of Lindell. ¶80.

Although plaintiff alleges that she has participated frequently in protests, ¶38, she does not allege that she was subjected to police use of chemicals at any other protest, but claims to have seen police deploy chemicals without warning against protesters in 2014. ¶54.

**1.     Count I of the second amended complaint [ECF 68] fails to state a cognizable claim for damages under 42 U.S.C. §1983 against the individual defendants, as it fails plausibly to allege facts showing that any defendant in fact intended to retaliate against plaintiff for protected activity.**

Whether plaintiff's latest amended complaint states a claim depends on whether it has facial plausibility. In making that determination, this Court can consider alternative

3

explanations for alleged conduct, and, further, determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, at 679 (2009).

The Eighth Circuit has adumbrated the standards governing a First Amendment retaliation claim against a government officer in *Quraishi v. St. Charles County*, 986 F.3d 831 (8th Cir. 2021):

> To prevail on a First Amendment retaliation claim, the reporters must show: (1) they engaged in protected activity; (2) [defendant] caused an injury to the reporters that would chill a person of ordinary firmness from continuing the activity; (3) and a causal connection between the retaliatory animus and injury. [Citation omitted.] To establish the causal connection, the reporters must show they were "singled out" because of their exercise of constitutional rights.

Obviously, plaintiff does not allege that she is a "reporter"; but whether a reporter or not, she was obliged to allege factual content that allows this Court "to draw the reasonable inference that a defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plaintiff does not even pretend to assert that defendants Nicholas Manasco, Lance Coats, Joshua Becherer, Matt Tesreau, Michael Flatley, Joseph Busso, Jon Long, and Timothy Boyce were at or near the scene of her alleged gassing or spraying at the time. This shotgun approach to suing police officers because they were on duty during a riot or disorderly protest has been found wanting in *Street v. O'Toole*, No. 4:19 CV 2590 CDP, 2021 U.S. Dist. LEXIS 31856 (E.D. Mo. Feb. 22, 2021), and there is no sound reason why this Court should allow the action to go forward against the aforementioned individual defendants.

As to defendants Cliff Sommer, Bennie Blackmon, Daniel Cora, and Joseph Calabro, plaintiff alleges, "The City of St. Louis has confirmed that Defendants Cliff

4

Sommer, Joseph Calabro, Daniel Cora, and Bennie Blackmon were in the BEAR at the time that the police deployed chemical munitions at Plaintiff." ¶69.  The City's answer in this cause, ECF 72, does no such thing.  See ECF 72, ¶¶68, 69.  Read literally, plaintiff's allegation is an allegation only of what the City "has confirmed," and certainly the individual defendants are not bound by such a third party statement.  In any event, the mandatory liberal reading of the complaint permits at most the inference that these four defendants were present when chemical munitions were deployed.  See *White v. Jackson,* 865 F.3d 1064, 1081 (8th Cir. 2017).

That does not end the inquiry, however.  Plaintiff's claim depends on whether she was "singled out" for retaliation for exercising First Amendment rights.  Yet her amended complaint does not allege that she was present on Lindell for the purpose of observing or recording anything.  She was trying to go home.  The "protest" alleged by plaintiff was over.  The retaliation theory requires pleading facts that would plausibly show that government misconduct was motivated by the plaintiff's exercise of First Amendment rights, and such facts are not apparent from plaintiff's pleading.[1]

Assuming for the moment that plaintiff's amended complaint suffices to allege a First Amendment claim, because the individual defendants mistook her and her companions for a remnant of the crowd of rioters that had previously been dispersed from the Mayor's home, the defendants would then be entitled to qualified immunity, as it was not clearly established in 2017 (or now) that the use of chemical munitions to disperse a group suspected of participation in a riot or near-riot was a violation of the First Amendment.  Here, too, *Quraishi* is instructive.  In that case, qualified immunity was

---

[1] This is particularly true of the officers named in ¶70, who are not even alleged to have been present when the gassing or spraying of plaintiff occurred.

5

rejected because retaliation against reporters who were obviously recording or reporting on an event of public importance was clearly unconstitutional. However, qualified immunity was granted an officer who threw a tear gas canister at reporters, because it was not clearly established that this was an unlawful "seizure" for Fourth Amendment purposes. By contrast, the officers in this case were acting in the aftermath of a chaotic situation, in which it was reasonable to try to prevent disorderly crowds from re-assembling. From the facts found in *Ahmad* and alleged in the complaint, it was not clearly violative of the First (or Fourth) Amendment for police officers to attempt to disperse plaintiff and her companions who were "taking cover" or behaving as a group, and could be thought to have been a potential threat to public order.

In the final analysis, plaintiff's claim against the individual defendant officers rests on a conclusion: that the deployment of gas or pepper spray was motivated by plaintiff's First Amendment activities, which had terminated some time before. If plaintiff's theory is accepted, any application of force by an officer to any pedestrian at any time could be a claimed First Amendment violation.

Count I of the second amended complaint should be dismissed as to all individual defendants.

**2. Count II of the second amended complaint [ECF 68] fails to state a cognizable claim of conspiracy under 42 U.S.C. §1983, because the claim is precluded by the intracorporate conspiracy doctrine; alternatively, the individual defendants are entitled to qualified immunity given the unsettled state of the law regarding the intracorporate conspiracy doctrine.**

6

This Court has previously refused to apply the intracorporate conspiracy doctrine to plaintiff's action, ECF 40, and has likewise refused to recognize qualified immunity in the context of an intracorporate conspiracy claim. *Hall v. City of St. Louis*, 465 F. Supp. 3d 937 (E.D. Mo. 2020). The judges in this district are in conflict on the immunity issue. Compare *Hall* and *Street v. O'Toole*, No. 4:19 CV 2590 CDP, 2021 U.S. Dist. LEXIS 31856 (E.D. Mo. Feb. 22, 2021), with *Baude v. City of St. Louis*, 476 F. Supp. 3d 900, 916 (E.D. Mo. 2020). If judges cannot agree about the state of the law, it is difficult to discern how police officers are supposed to know that their actions constitute a constitutional violation. Cf. *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)(noting that government officer not plainly incompetent when eight appellate judges agreed with his view of the law in a case of first impression).

Individual defendants herein respectfully urge this Court to reconsider its views in light of Chief Judge Sippel's opinion in *Baude*, appropriately relieving these defendants of the burden of defending this untenable claim at this early stage of the proceedings--as the Supreme Court has repeatedly opined. E.g., *Siegert v. Gilley*, 500 U.S. 226 (1991).

**3.    Counts VII and VIII of the second amended complaint [ECF 68] fail to state a cognizable claim of excessive force or failure to prevent use of excessive force, because plaintiff fails to allege facts plausibly showing that any individual defendant not alleged even to have been present was personally involved in deploying gas or pepper spray at the plaintiff, or that any such individual defendant knew of and had time to prevent deployment of gas or pepper spray.**

As noted above, plaintiff apparently believes that the defendants bear the burden of proof in this case. Thus, plaintiff complains that the defendants must report to them

7

concerning the identity of the officers that she claims discharged tear gas or pepper spray toward her on September 15-16, 2017. Of course, the ability to identify officers who did so depends in the first instance on the truth of the allegation that plaintiff was gassed or sprayed at all. Presumably plaintiff expects that defendants must admit that fact as well.

Of course, at this stage of the proceedings, the Court must assume the truth of any well-pleaded material allegations of fact. However, plaintiff is not at liberty to recover on the basis of guilt by association. In this connection, defendants point to *Street v. O'Toole*, No. 4:19 CV 2590 CDP, 2021 U.S. Dist. LEXIS 31856 (E.D. Mo. Feb. 22, 2021). In that case, Judge Perry, the author of the *Ahmad* decision, rejected claims against officers at the scene of alleged police use of excessive force, applying the clear weight of authority on the issue of personal involvement in a constitutional violation.

Plaintiff's claim against defendants Nicholas Manasco, Lance Coats, Joshua Becherer, Matt Tesreau, Michael Flatley, Joseph Busso, Jon Long, and Timothy Boyce border on malicious prosecution. Even accepting all of the allegations of the complaint as true, plaintiff's claims of use of force or failure to intervene against these defendants are based on conclusions and speculation. They are sued because they were SWAT officers who *might* have been on the "BEAR." That is insufficient.

**4.     Because plaintiff has alleged only an application of force without a seizure, the individual defendants are entitled to qualified immunity against plaintiff's claims in counts VII and VIII.**

As to all the individual defendants accused of using force, and particularly defendants Sommer, Calabro, Cora and Blackmon, the allegations of the latest amended complaint on their face show at most a sudden application of tear gas or pepper spray at

8

plaintiff or her group. Plaintiff's freedom of movement was never restrained. In other words, from the face of the amended complaint, no defendant used force in connection with a seizure of the defendant. As of September 2017, it was not clearly established that use of force unaccompanied by an arrest or other physical restraint on movement was an independent Fourth Amendment violation. Certainly no case from the Supreme Court or this Circuit has so held. On the contrary, *Quraishi v. St. Charles County,* supra, is authority for the contrary.

In *Quraishi*, the Eighth Circuit held that the defendant officer, who deployed tear gas at a group of reporters covering protests in Ferguson, did not violate clearly established Fourth Amendment rights because it was not clearly established that deploying tear gas constitutes a Fourth Amendment seizure. *Quraishi v. St. Charles County*, supra, 2021 U.S. App. LEXIS 2379, at *17. Therefore, the defendant officer was entitled to qualified immunity from the plaintiffs' Fourth Amendment § 1983 claims. The Eighth Circuit held, in no uncertain terms, that "[t]o establish a Fourth Amendment violation, 'the claimant must demonstrate a seizure occurred and the seizure was unreasonable.'" *Id.* at *15 (quoting *McCoy v. City of Monticello*, 342 F.3d 842, 846 (8th Cir. 2003)). The plaintiff reporters argued that they were seized for Fourth Amendment purposes when they were tear gassed, because they could not stay in their chosen location. *Id.* at *16. But, the Eighth Circuit held that the cases relied upon by plaintiffs for that contention did not give fair warning to the defendant officer that the deployment of tear gas constitutes a Fourth Amendment seizure. *Id.* Then, the Court held there is no "'precedent,' 'controlling authority' or 'robust consensus of cases of persuasive authority' to show it was clearly established that tear-gassing was a seizure." *Id.* at *17

9

(citing *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018)). Thus, the Court held, it is not clearly established that deploying tear gas constitutes a Fourth Amendment seizure, and "[t]he district court should have granted qualified immunity to [the defendant officer] on [plaintiffs'] Fourth Amendment claim." Id. at 17.

Here, as in Quraishi, the individual defendants are entitled to qualified immunity from plaintiff's claims in counts VII and VIII, because it was not clearly established at the time, that deploying a tear gas canister at someone constituted a Fourth Amendment seizure. Absent a seizure, there is no actionable Fourth Amendment claim. As the Supreme Court has put it, "An excessive force claim is a claim that a law enforcement officer carried out an unreasonable seizure through a use of force that was not justified under the relevant circumstances." *County. of L.A. v. Mendez*, 137 S. Ct. 1539, 1547 (2017); cf.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons…against unreasonable *searches and seizures*, shall not be violated…" U.S. Const., amend. IV (emphasis added). Thus, "[t]o establish a Fourth Amendment violation, 'the claimant must demonstrate a seizure occurred and the seizure was unreasonable.'" *Quraishi*, 2021 U.S. App. LEXIS 2379 at *15 (quoting *McCoy*, 342 F.3d at 846); cf. *Tennessee v. Garner*, 471 U.S. 1, at 7 (1985)("While it is not always clear just when minimal police interference becomes a seizure, see *United States v. Mendenhall*, 446 U.S. 544 (1980), there can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment."). Quite simply, absent a seizure, there is no constitutional warrant to examine the force used. While state law may provide a remedy to prospective plaintiffs regarding an

apprehension of harmful contact or offensive touching absent a Fourth Amendment seizure, the Constitution does not. For these reasons, the individual defendants in this cause are entitled to qualified immunity.

**5.     Counts VII and VIII of the second amended complaint [ECF 68] fail to state a claim for an additional reason:  a simple assault, even though committed by police officers against a citizen, is just not the sort of deprivation of a federally protected right that was contemplated by the 42nd Congress in enacting the predecessor of §1983, and so is not actionable under that statute--particularly when state remedies for the conduct are both adequate and available in practice.**

Liberally construed (leaving aside plausibility), the plaintiff and some others allegedly suffered an unprovoked assault at the hands of some police officers.  Because the alleged actors are officers, plaintiff naturally invokes 42 U.S.C. §1983.  In this connection, defendants call the Court's attention to the lament of the late Justice Scalia, joined by Justice Thomas:

> The §1983 that the Court created in 1961 bears scant resemblance to what Congress enacted almost a century earlier. . . . *Monroe [v. Pape]* changed a statute that had generated 21 cases in the first 50 years of its existence into one that pours into the federal courts tens of thousands of suits each year, and engages this Court in a losing struggle to prevent the Constitution from degenerating into a general tort law." *Crawford-El v. Britton*, 523 U.S. 574, 611 (1998)(dissenting opinion).

Justice Scalia observed further, "I believe that *no* 'intent-based' constitutional tort would have been actionable under the § 1983 that Congress enacted." *Id.,* 612.

Defendants also call the Court's attention to Justice Thomas's views:

> Qualified immunity is not the only doctrine that affects the scope of relief under §1983. In *Monroe v. Pape*, 365 U. S. 167, 81 S. Ct. 473, 5 L. Ed. 2d 492 (1961), the Court held that an officer acts "'under color of any statute, ordinance, regulation, custom, or usage of any State'" even when state law did not authorize

11

his action, i*d.,* at 183, 81 S. Ct. 473, 5 L. Ed. 2d 492. Scholars have debated whether this holding is correct. Compare Zagrans, "Under Color of " What Law: A Reconstructed Model of Section 1983 Liability, 71 Va. L. Rev. 499, 559 (1985), with Winter, The Meaning of "Under Color of " Law, 91 Mich. L. Rev. 323, 341-361 (1992), and Achtenberg, A "Milder Measure of Villainy": The Unknown History of 42 U. S. C. §1983 and the Meaning of "Under Color of " Law, 1999 Utah L. Rev. 1, 56-60.  Although concern about revisiting one doctrine but not the other is understandable, see *Crawford-El v. Britton*, 523 U. S. 574, 611, 118 S. Ct. 1584, 140 L. Ed. 2d 759 (1998) (Scalia, J., joined by Thomas, J., dissenting), respondents—like many defendants in §1983 actions—have not challenged *Monroe*.  [*Baxter v. Bracey*, 140 S. Ct. 1862, 1865 n. 2 (2020)(Thomas, J., dissenting from denial of certiorari).

Here, individual defendants will and do seek to challenge *Monroe*.  Section 1983 was enacted to address the systemic threat to individual rights posed by the Ku Klux Klan during Reconstruction.  Its purpose and proper construction are exemplified by *Adickes v. S.H. Kress & Co.,* 398 U.S. 144 (1970), in which the plaintiff was entitled to recover if she could demonstrate the existence of a state-enforced custom, i.e., a custom having the force of law.  An adventitious assault, even by state actors, is not an actionable custom.

Because this Court is bound by *Monroe,* defendants will not expand further on their argument that plaintiff's claim against them is not for any action under color of law, but is merely a common law tort.  However, that leads to another point.

Plaintiff herself asserts that defendants' conduct is actionable in tort under Missouri law.  Defendants do not quarrel with the proposition that an assault or battery is actionable under Missouri law.  There can be no doubt that the Missouri courts can and do apply tort law to actions of government officers.  E.g., *Ysaguirre v. Hummert,* 667 S.W.2d 741 (Mo.App.E.D. 1984).  That being so, it would seem that plaintiff's claim against defendants should not be treated as actionable under §1983.

The *sine qua non* of an action under §1983 is the deprivation of a federally protected right without due process, inasmuch as the wellspring of the statute is the

Fourteenth Amendment. See, e.g., *Baker v. McCollan*, 443 U.S. 137 (1979). In the Fourteenth Amendment due process context, it is fairly clear that trespassory deprivations of property are not actionable under §1983 when state remedies accord due process. *Hudson v. Palmer*, 468 U.S. 517 (1984). It would seem appropriate to expand the statutory construction employed in those cases to simple assault cases and the like. Section 1983 was intended for situations where the state remedy is adequate in theory but unavailable in practice. The state remedies for the conduct alleged in this case are both adequate in theory and available in practice. Cf. *Paul v. Davis*, 424 U.S. 693 (1976).

**6.      Plaintiff's common law claims (counts IV, V, VI, and IX) do not state a claim for relief under governing state law, and are barred by official immunity.**

Plaintiff's state common law claims do not withstand scrutiny. First, as to defendants Nicholas Manasco, Lance Coats, Joshua Becherer, Matt Tesreau, Michael Flatley, Joseph Busso, Jon Long, and Timothy Boyce, plaintiff is unable to allege their actual participation in any mistreatment of plaintiff. Missouri law, any more than federal law, does not allow an action based on guilt by association. There must be a causal connection between the actor and the injury. E.g., *City of St. Louis v. Benjamin Moore & Co.,* 226 S.W.3d 110 (Mo.banc 2007). Similarly, in cases of intentional tort, the actor must intend the injury. See *Geiger v. Bowersox,* 974 S.W.2d 513 (Mo.App.E.D. 1998).

As to defendants Sommer, Cora, Calabro and Blackmon, the allegations of the amended complaint are insufficient to show that requisite intent for assault, false arrest, or intentional infliction of emotional distress. In addition, the claims of infliction of emotional distress are simply repackaged assault claims, which is not permitted under Missouri law under the guise of pleading in the alternative. *State ex rel. Halsey v.*

13

*Phillips,* 576 S.W.3d 177 (Mo.banc 2019); *Sansonetti v. City of St. Joseph*, 976 S.W.2d 572, 580 (Mo.App.W.D. 1998).

Because the acts alleged in plaintiff's state law counts (IV, V, VI and IX) clearly were discretionary, those claims are barred by official immunity.  Plaintiff's boilerplate allegations of bad faith and malice are simply conclusions.  See *State ex rel. Alsup v. Kanatzar,* 588 S.W.3d 187 (Mo.banc 2019).

**7.     Plaintiff's novel claim of vicarious liability under the St. Louis City Charter (count X) is without merit, and, in any event, should not be subject to this Court's supplemental jurisdiction, as it involves novel and complex questions of state law.**

Plaintiff seeks to impose vicarious liability on defendants O'Toole and Deeken by reason of a provision of the St. Louis City Charter (art. VIII, §5) that has never been the subject of authoritative judicial construction.  For the reasons stated in *Street v. O'Toole,* supra, defendants O'Toole and Deeken submit that this Court should decline to exercise supplemental jurisdiction over this novel and complex issue of state law.  See 28 U.S.C. §1367(c)(1).

Conclusion

For the foregoing reasons, the second amended complaint should be dismissed, with prejudice as to all federal claims, without prejudice as to the state claims only.

                                      Respectfully submitted,

                                      JULIAN L. BUSH,
                                      CITY COUNSELOR
                                      /s/Robert H. Dierker 23671MO
                                      Associate City Counselor
                                      dierkerr@stlouis-mo.gov
                                      Brandon Laird 65564(MO)

                                                Abby Duncan 67766MO  
                                                Associate City Counselors  
                                                Adriano Martinez 69214(MO)  
                                                Catherine A. Dierker 70025(MO)  
                                                Assistant City Counselors  
                                                314 City Hall  
                                                1200 Market St.  
                                                St. Louis, MO  63103  
                                                314-622-3361  
                                                FAX 314-622-4956

Abby Duncan 67766MO  
Associate City Counselors  
Adriano Martinez 69214(MO)  
Catherine A. Dierker 70025(MO)  
Assistant City Counselors  
314 City Hall  
1200 Market St.  
St. Louis, MO  63103  
314-622-3361  
FAX 314-622-4956