# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| MEGAN ELLYIA GREEN, | ) |
|     Plaintiff, | ) ) ) |
| v. | )   Cause No. 4:18-CV-01629-JCH |
| CITY OF SAINT LOUIS, MISSOURI, et al. | ) ) ) |
|     Defendants. | ) |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION
## TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

On September 15, 2017, members of the St. Louis Metropolitan Police Department ("SLMPD") SWAT team, hiding in an armored vehicle known as a BEAR, deployed tear gas at numerous groups of innocent, law-abiding civilians on a busy Lindell Boulevard, which was still open to traffic. Plaintiff was one of these law-abiding civilians. Defendants cannot credibly contest that this happened. The BEAR is seen on video deploying chemical weapons at one group of unsuspecting people simply walking down Lindell, as numerous cars and a fire truck are then forced to drive through a cloud of tear gas.

Being an armored vehicle, it is impossible to see which officers were involved in this egregious, violent act. In a brazen violation of SLMPD policy, the SWAT officers never documented these uses of force. The use of the BEAR to launch chemical weapons at civilians is not even mentioned in the police report.

Plaintiff has made every effort to identify the officers involved, but the SLMPD and the City of St. Louis is stonewalling this investigation. After failing to document this use of force, the SWAT officers are now hiding behind a blue wall of silence, refusing to identify the perpetrators of these heinous acts. Plaintiff has made every effort to limit the number of officers she has sued. Plaintiff even did the City's job by eliminating certain SWAT officers as suspects by spending

1

hours reviewing footage and identifying officers who were not in the BEAR in the moments prior to the deployment. Thus, it is absolutely galling that the City is now pointing the finger at Plaintiff for failing to name the officers that assaulted her as they hide their own malfeasance. It should have been easy for the City to identify the officers in question. They were members of a small group of specialized officers, and the BEAR in question is the only such vehicle that was on the scene: a finite number of suspects in a single location. The City is essentially claiming that the Constitution does not protect citizens of St. Louis if police officers do a good enough job concealing their illegal behavior and the City does not fulfill its discovery obligation of identifying its own employees. The motion should be denied as to Counts I-VI, IX, and X of the Second Amended Complaint.

## FACTS

On September 15, 2017, Plaintiff attended a peaceful protest march in the Central West End neighborhood of St. Louis. Doc. No. 68 ¶¶ 50-53. At the conclusion, Plaintiff saw buses of riot gear-clad SLMPD officers block the intersections at Waterman Boulevard and Lake Avenue, refusing to allow Plaintiff and other protestors to leave. *Id.* ¶¶ 53-54. As the officers started dispersing tear gas, Plaintiff and 100-150 other protestors took refuge in a nearby synagogue. *Id.* ¶¶ 56-57. Plaintiff waited in the synagogue for an hour while officers banged on the door, yelled, and surrounded the building. *Id.* ¶¶ 58-59. Fearful of the officers' aggressive response to the protest, Plaintiff and about ten others left the synagogue once the officers retreated, hoping to get to her vehicle and go home. *Id.* ¶ 61.

A line of SLMPD officers blocked Plaintiff's path, so she requested permission from the officers to pass them. *Id.* ¶¶ 62-63. The officers granted her permission and allowed Plaintiff to pass, but they mocked her as she did it. *Id.* ¶¶ 64-65. Soon thereafter Plaintiff passed the police line, an armored SWAT vehicle called a BEAR raced passed Plaintiff from the direction she from

which she had just come and did a U-turn. *Id.* ¶¶ 67, 72-75. The SWAT officers inside dispersed tear gas at Plaintiff and fellow protestors without warning. *Id.* ¶¶ 75, 76. Defendant Officers, Cliff Sommer, Joseph Calabro, Daniel Cora, and Bennie Blackmon, Nicholas Manasco, Lance Coats, Joshua Becherer, Matt Tesreau, Michael Flatley, Joseph Busso, Jon Long, and Timothy Boyce are SWAT officers who were present on the scene that night. *Id.* ¶ 68. Neither Plaintiff nor her companions had committed any criminal acts or threatened officer safety. *Id.* ¶¶ 77-78. In addition to fears of further retaliation for exercising her constitutional rights, Plaintiff experienced pain and burning in her eyes and nose and breathing problems that persisted for six months. *Id.* ¶¶ 79, 83-85.

**ARGUMENT**

I. **Plaintiff Has Stated a Claim for Retaliation.**

   A. **Plaintiff Has Stated a Claim for Retaliation, and Defendants are Not Entitled to Qualified Immunity.**

To prevail on a First Amendment retaliation claim, Plaintiff must show: (1) she engaged in protected activity; (2) Defendants caused an injury to her that would chill a person of ordinary firmness from continuing the activity; (3) and a causal connection between the retaliatory animus and injury. *Quraishi v. St. Charles County, Missouri*, 986 F.3d 831, 837 (8th Cir. 2021) (citing *Baribeau v. City of Minneapolis*, 596 F.3d 465, 481 (8th Cir. 2010) (per curiam)). To establish the causal connection, Plaintiff must show she was "singled out" because of her exercise of constitutional rights.[1]

---

[1] Defendants make an offhand comment about Plaintiff not being a reporter. First Amendment retaliation claims do not require Plaintiff to be a reporter. In *Quraishi*, the Eighth Circuit cited a laundry list of cases identifying different types of protected First Amendment activity, noting that it is clearly established since at least 1988 that "the First Amendment prohibits retaliatory actions against speech." 986 F.3d 838-39 (citing *Hartman v. Moore*, 547 U.S. 250, 256, 126 S.Ct. 1695, 164 L.Ed.2d 441 (2006)).

Plaintiff pleaded a retaliation claim. First, Plaintiff engaged in protected activity, namely exercising her rights to free speech and free assembly. In her Second Amended Complaint, Plaintiff details at length her involvement in a protest, activity protected by the First Amendment. Second, Plaintiff has established a causal connection between the gassing and the protected activity. Plaintiff and the others were leaving the immediate vicinity of a protest and headed towards her car. The armored BEAR vehicle passed by her once, turned around, and then headed directly towards her and her compatriots. Just as in *Quraishi*, the actions of the officers in the BEAR establish that Plaintiff was targeted and singled out. 986 F.3d at 838; *see also Peterson v. Kopp*, 754 F.3d 594 (8th Cir. 2014) (summary judgment precluded on first amendment claim that arrestee was pepper sprayed in the face for exercising his right to free speech). Either way, this establishes the causal connection between the officers' animus and the injury. Finally, deploying chemical munitions in a purely punitive and arbitrary manner is the type of injury that would chill a person of ordinary firmness from exercising their right to free speech and free assembly.

Defendants claim that Plaintiff cannot state a claim because she was not actively protesting at the moment she was tear gassed. Doc. No. 77 at 5. This is absurd. Given the proximity to the events and the actions of the officers of driving past her, turning around, and then targeting her with tear gas, it is reasonable to infer that the officers either singled Plaintiff out because she and her compatriots appeared to be connected to the protests, or perhaps, specifically targeted Plaintiff because she is a well-known politician, who is a visible critic of the SLMPD. The City's logic is baffling. If the police did not target Plaintiff for being a protestor, then the City appears to be arguing that these SLMPD officers were arbitrarily firing tear gas at St. Louis citizens and that is permissible conduct.

Equally ridiculous is Defendants' qualified immunity claim. First, Defendants make allegations that are not found anywhere in the Second Amended Complaint – namely that a "riot"

4

was purportedly occurring at some point that evening at the mayor's house, which is more than a half-mile from where SLMPD assaulted Plaintiff. Second, Defendants take these unfounded allegations and claim that Defendants are apparently constitutionally entitled to gas anyone who was suspected of being involved in said riot even if the people are encountered hours later in a totally different area and even if the people are not breaking any laws when they get subsequently gassed. Despite Defendants best efforts to inject spurious allegations into their motion, the Second Amended Complaint establishes that at the time Defendants teargassed Plaintiff, she was not engaged in any criminal activity whatsoever and the police had no reason to assault her.

> **B. Because Defendants Failed to Document their Involvement and are Actively Concealing their Involvement in this Assault, Plaintiff Properly Named the Defendants.**

Defendants claim, "Plaintiff does not even pretend to assert that defendants Nicholas Manasco, Lance Coats, Joshua Becherer, Matt Tesreau, Michael Flatley, Joseph Busso, Jon Long, and Timothy Boyce were at or near the scene of her alleged gassing or spraying at the time." Doc. No. 77 at 4. This is false. In the months of *John Doe* discovery, the City of St. Louis identified that only members of SWAT were in the BEAR. Plaintiff asked the City to identify which SWAT members were in the BEAR. Plaintiff foolishly believed this would be an easy question to answer, as the City has policies requiring officers to document the use of chemical munitions.

Initially, the City of St. Louis could not identify a single officer. *See* Exhibit 1, Question 3, Initial Response. Eventually, the City identified the driver of the BEAR, Defendant Blackmon. Plaintiff deposed Defendant Blackmon, but he could not identify anyone else in the BEAR that night. *See* Exhibit 1, Question 3, First Supplemental Response. After conducting a meet and confer, the parties agreed that the best path forward to identify the occupants of the BEAR was a 30(b)(6) deposition.

On June 23, 2020, Plaintiff deposed the City's corporate representative, Sergeant Charles Wall. During that deposition, Sergeant Wall testified that in order to educate himself as a 30(b)(6) representative, he spoke with every member of SWAT. After doing so, he was unable to identify a single other SWAT officer who was in the BEAR when it drove down one of the busiest streets in St. Louis and fired tear gas at civilians, an event most people would remember.

He testified, however, that he was able to rule out Lieutenant Tim Sachs, Sergeant Cliff Sommer, Sergeant John Jones, and Sergeant Michael Scego. *See* Exhibit 2, Deposition of Charles Wall at 13:16-14:10. He was also able to purportedly rule out Aaron Mueller, who told Sergeant Wall that he was driving another vehicle. *Id.* at 14:11-21. Finally, Sergeant Wall testified that Defendant Flatley viewed a video of the BEAR gassing civilians and "indicated that he did not believe that he was present on the BEAR at that time either." *Id.* 14:11-16:5. Every other SWAT officer could neither confirm nor deny that they were in the BEAR at the relevant time. *Id.* 22:16-24.

After this fruitless deposition, the parties met and conferred again. Plaintiff walked Defendants through the videos that the City produced in discovery. Plaintiff's counsel pointed out various SWAT officers who could be seen outside of the BEAR in the minutes immediately preceding the gassing of Plaintiff, something that Plaintiff would have expected Sergeant Wall, a trained police investigator, to have observed and investigated. Plaintiff did this to help the City eliminate potential defendants from the pool of SWAT officers. Months later, on September 14, 2020, the City supplemented their responses one last time and stated that "*at least* the following officers were on the BEAR in addition to Officer Blackmon listed above" and listed Defendants Sommer, Calabro, and Cora. *See* Exhibit 1, Question 3, Third Supplemental Response.[2] Notably,

---

[2] For unknown reasons, Defendants refer to the City's Answer to the Second Amended Complaint. Defendants are basing the allegation, not on the Answer, but instead the sworn interrogatory responses by the City. *See* Exhibit 1.

during the City's 30(b)(6) deposition three months earlier, Sergeant Wall testified that he was able to conclusively rule out Sommer as a Defendant. The City has never explained how Sommer went from conclusively out of the BEAR to conclusively in the BEAR.[3]

Plaintiff was at a loss. With a looming deadline to amend, Plaintiff was confident of two things. First, everyone on the BEAR was a member of SWAT. Second, after months of depositions, video review and discovery conferences, the City of St. Louis inexplicably could not state whether Defendants Nicholas Manasco, Lance Coats, Joshua Becherer, Matt Tesreau, Michael Flatley, Joseph Busso, Jon Long, or Timothy Boyce were or were not on the BEAR. Accordingly, Plaintiff amended her complaint with the best information she had available to her. This is not, as Defendants claim, naming them because they were "on duty." This is specifically because the City has stated that members of SWAT were on the BEAR, and the City could not rule these persons out. Plaintiff has no other way to know whether these persons were in the BEAR at the time she was assaulted. In fact, Plaintiff on her own accord identified SWAT officers who were on duty but, according to video evidence, were not on the BEAR, and she did not include these officers in her Complaint. The only officers listed in the Complaint are officers who either confirmed to be on the BEAR or the small group of SWAT officers who were on the scene but whose whereabouts during the event are implausibly unknown by the City. Notably, the City admitted on September 14, 2020, that "[t]here is one officer whom we believe might have been on the BEAR that night, but due to a medical-related absence, we have not been able to confirm." More than six months later, the City has not confirmed whether this unknown officer was on the BEAR.

---

[3] Defendants also identified numerous officers who they "definitively state" were not on the BEAR. *See* Exhibit 1. Despite the flip-flip on Sgt. Sommer's involvement, Plaintiff took the City at its word and did not include them in the Second Amended Complaint. Also notable is that the City did not "definitively state" that Defendant Flatley was not on the BEAR, despite his belief otherwise.

As discussed above, Plaintiff has pleaded the elements of a retaliation claim. At this stage, given that Defendants have failed to adequately document their involvement in this matter and are actively concealing their involvement in this assault, Plaintiff respectfully requests the Court to deny the motion as to each Defendant.

## II. Plaintiff Has Stated a Claim for Conspiracy.

As Defendants acknowledge, the Court has already rejected their motion to dismiss on the basis of the intracorporate conspiracy doctrine. Defendants offer no compelling reason to deviate from the Court's previous ruling, and as Defendants acknowledge, this issue is currently on appeal on in the Eighth Circuit. Unless the Eighth Circuit rules otherwise, the Court should once again deny the motion to dismiss.

## III. Plaintiff Concedes That Recent Eighth Circuit Precedent Bars Counts VII and VIII of the Amended Complaint.

Plaintiff rejects Defendants' patently absurd argument that the availability of state law remedies for battery overrides decades of federal case law designed to address unconstitutional uses of force. However, Plaintiff concedes that the Eighth Circuit's recent decision in *Quraishi v. St. Charles County, Missouri*, 986 F.3d 831, 841 (8th Cir. 2021) renders Counts VII and VIII of the Amended Complaint noncognizable.[4]

---

[4] Defendants make other arguments regarding these counts, which were rendered moot by *Quraishi*. However, the position and tone taken by the City of St. Louis is deeply troubling. As discussed at length above, Defendants concealed themselves in an armored car, violated SLMPD policy by failing to document that the gassing even occurred, much less their individual involvement, and now refuse to confirm nor deny their involvement in the gassing. The City now glibly points to the burden of proof, knowing full well that Defendants are actively obfuscating the truth. The City and its lawyers should be conducting an internal affairs investigation of these officers and punishing them for gross dereliction of duty, insubordination, and impeding an investigation. Instead, they endorse their duplicitous behavior and thumb their nose at Plaintiff, who has exhausted all possible methods to identify the perpetrators of this assault.

Again, Plaintiff named these officers in good faith based on the limited information provided by the City. Defendants simply cannot be permitted to obfuscate their role in the assault and then, sarcastically to boot, blame Plaintiff for not figuring out which of the officers were involved.

**IV.     Plaintiff's State Law Claims Are Not Barred by Official Immunity.**

Official immunity "'does not apply to discretionary acts done in bad faith or with malice.'" *Davis v. White*, 794 F.3d 1008, 1013 (8th Cir. 2015) (quoting *Blue v. Harrah's North Kan. City, LLC*, 170 S.W.3d 466, 479 (Mo. App. 2005)). "'A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another.'" *Davis*, 794 F.3d at 1013 (quoting *State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 447 (Mo. banc 1986)). "Bad faith" means "'conscious wrongdoing'" or "'breach of a known duty through some ulterior motive.'" *Id.*

Defendant Officers acted in bad faith or with malice. A reasonable officer would recognize that consciously or intentionally injuring law-abiding citizens for the exercise or perceived exercise of their First Amendment rights is a violation of her duties as an officer. Defendant Officers passed her and then doubled back to deploy chemical munitions against Plaintiff to terrorize her and deter criticism of the SLMPD. Doc. No. 68 ¶¶ 43, 50, 71-78, 83. *See Quraishi*, 986 F.3d at 841 (finding that evidence that the plaintiffs were doing nothing wrong when the officer tear gassed them at a protest supports an inference of "conscious wrongdoing" on the part of the officer.) Defendant Officers are not entitled to official immunity for Plaintiff's state law claims.

---

Plaintiff hopes that being put under oath in a deposition will compel these officers to be more forthcoming than they have been to date.

Bizarrely, the City also states "the ability to identify officers who did so depends in the first instance on the truth of the allegation that plaintiff was gassed or sprayed at all. *Presumably plaintiff expects that defendants must admit that fact as well.*" Doc. No. 77 at 8 (emphasis added). Plaintiff does not understand why Defendants are being so glib, especially in light of the SLMPD's utter failure to document or investigate this use of force. Regardless, the City cannot reasonably deny that the BEAR gassed civilians on Lindell, as they have produced a video showing the BEAR doing exactly that. The City should be ashamed of SLMPD's behavior in this case, not gloating about it.

Defendants argue that Plaintiff's claims for negligent infliction of emotional distress and intentional infliction of emotional distress are not actionable because Plaintiff has other claims pleaded, like assault and battery. Doc. No. 77 at 13. Defendants' argument is incorrect. Intentional infliction of emotional distress is "intended to supplement existing forms of recovery" in cases where the sole motivation for the act was to cause emotional distress. *Sansonetti v. City of St. Joseph*, 976 S.W.2d 572, 580 (Mo. App. 1998) (overruled on other grounds). Plaintiff's infliction of emotional distress claims have a "factual and legal basis independent from that of her assault and battery claims." *State ex rel. Halsey v. Phillips*, 576 S.W.3d 177, 181 (Mo. banc 2019). Plaintiff's intentional infliction of emotional distress claim is discrete if "a jury could reasonably find the facts Plaintiff alleges are 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.* (quoting *Gibson v. Brewer*, 952 S.W.2d 239, 249 (Mo. banc 1997)). Because negligent infliction of emotional distress does not include a "sole motivation" requirement, there is no bar to that tort being raised along with claims alleging assault or any other tort. *See Brown v. City of Pine Lawn*, No. 4:17CV01542 ERW, 2018 WL 950211, at *7 (E.D. Mo. Feb. 20, 2018). Further, even assuming *arguendo* that some of Plaintiff's tort claims are incompatible, that does not prevent Plaintiff from raising infliction of emotional distress claims at the pleading stage. Federal Rule of Civil Procedure 8(d)(3) specifically allows a plaintiff to plead inconsistent claims. At the least, the infliction of emotional distress claims are alternative theories of recovery and are otherwise properly pleaded.

V. **The Court Should Not Decline to Exercise Supplemental Jurisdiction Over Plaintiff's Vicarious Liability Claims Under the City Charter.**

Article VIII, Section 5 of the Charter of the City of St. Louis states that "[e]ach head of a department, office or division shall be responsible for the acts or omissions of officers and employees appointed by him and may require bonds or other securities from them to secure

himself." The Court should not decline to exercise jurisdiction over the vicarious liability count because it arises from the conduct giving rise to every other count of the Second Amended Complaint.

Plaintiff recognizes that this vicarious liability count presents a novel argument and that no court has addressed it. Defendants claim that the absence of a reported case weighs against Plaintiff's interpretation. However, Defendants ignore that the more likely reason no such case law exists is that the City of St. Louis only recently wrested control of the St. Louis Metropolitan Police Department from the State of Missouri. Because the State had control of the police department, the issue of City department heads' vicarious liability could not have been asserted or litigated. However novel this argument may be, the fact remains that the clear and plain language of the City Charter imputes personal liability of City employees to the head of each department, office or division employing those people.[5] On September 15, 2017, Defendant Deekens was the Public Safety Director and Defendant O'Toole was the acting Chief of Police. The other individual Defendants worked for Defendants Deekens and O'Toole during the events that give rise to the Second Amended complaint. Accordingly, under the City Charter, Defendants Deekens and O'Toole are personally liable for the acts of their employees. While the courts have never had occasion to address this issue, the City Counselor issued an opinion that confirmed that this Charter provision means that department heads are "personally responsible for the acts or omissions of the subordinates appointed by them."

Defendants claim that cities are not permitted to create causes of action, citing *Yellow Freight Sys., Inc. v. Mayor's Comm'n on Human Rights of City of Springfield*, 791 S.W.2d 382,

---

[5] Plaintiff acknowledges that Judge Perry dismissed a vicarious liability claim under the City Charter in *Street v. O'Toole*, No. 4:19 CV 2590 (E.D. Mo. Feb. 22, 2021), but Plaintiff maintains that the plain language of the Charter and the relatedness of Count X to the remaining claims necessitate that the Court hear Count X of the Amended Complaint.

386 (Mo. banc 1990). In that case, the court considered whether a city could create its own municipal human rights commission to determine violations of its human rights ordinance. The court found that such an action was only vested in the power of the General Assembly. The City Charter provision, however, does not involve creating an entity to enforce its own ordinances in contravention of state law. *Yellow Freight* addresses a municipality creating a private right of action against a third party. *Id.* at 384. Here, the City's ordinance creates liability to its own department heads. *Yellow Freight* also explicitly acknowledges that an ordinance may establish an element of tortious conduct. *Id.* Defendants do not point to any authority barring it from promulgating such a Charter provision or to any state or federal authority with which this Charter provision conflicts.

Plaintiff recognizes the holding that public officers are not responsible for acts of subordinate officials under state law. *See Davis-Bey v. Missouri Dep't of Correction*, 944 S.W.2d 294, 298 (Mo. App. 1997). Yet, that case does not prohibit a city from creating vicarious liability for municipal employees, as the City Charter has done. The drafters of the City Charter chose to include this provision. It has not been repealed, it is not barred by state or federal law, and no higher government entity has usurped this authority. In fact, the "home-rule" case law cited by Defendants, *Cooperative Home Care, Inc. v. City of St. Louis*, provides that "police power is among those powers incident to a city's affairs, so that charter cities have authority to enact ordinances having a substantial and rational relation to the 'peace, comfort, safety, health, morality, and general welfare' of its inhabitants . . . even though those issues also are addressed by state and national laws." 514 S.W.3d 571, 586–87 (Mo. banc 2017) (quoting *Missouri Dental Bd. v. Alexander*, 628 S.W.2d 646, 650 (Mo. banc 1982)). Thus, the City is authorized to make public safety officials vicariously liable for the tortious and unconstitutional acts of their officers. It would be nonsensical to argue that the City can promulgate health, safety, and welfare laws for

which citizens are held, and simultaneously are that the City is barred from holding its employees accountable under similar laws. The Motion should be denied.

## CONCLUSION

For the reasons stated above, Defendants' Motion should be denied as to Counts I-VI, XI, and X.

Date: March 22, 2021                  Respectfully submitted,

KHAZAELI WYRSCH LLC

/s/ Javad Khazaeli
Javad Khazaeli, 53735(MO)
James R. Wyrsch, 53197(MO)
Kiara N. Drake, 67129(MO)
911 Washington Avenue, Suite 211
Saint Louis, MO 63101
(314) 288-0777
(314) 400-7701 (fax)
javad.khazaeli@kwlawstl.com
james.wyrsch@kwlawstl.com
kiara.drake@kwlawstl.com

**Attorneys for Plaintiff**