UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MEGAN ELLYIA GREEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:18CV1629 JCH |
| ) | |
| CITY OF ST. LOUIS, MISSOURI, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on the Motion to Dismiss of Individual Defendants, filed March 1, 2021. (ECF No. 76). The motion is fully briefed and ready for disposition.

**BACKGROUND[1]**

On September 15, 2017, the Circuit Court of the City of St. Louis issued its findings and verdict in *Stockley*, prompting some members of the public to engage in protest activity around the St. Louis metropolitan area, including within the City of St. Louis. (Second Amended Compl. ("SAC"), ¶¶ 26-31). The protests concerned the verdict itself and broader issues including racism in the criminal justice system and the use of force by police officers against African-American citizens. (*Id.*, ¶¶ 32-34). Most of the protests were non-violent. (*Id.*, ¶ 37). "In response to the protests, St. Louis Metropolitan police officers amassed at several protests wearing military-like tactical dress, helmets, batons, and full-body riot shields and carrying chemicals, such as tear gas, skunk, inert smoke, pepper gas, pepper pellets, xylyl bromide, and/or similar substances (collectively, 'chemical agents')." (*Id.*, ¶ 35).

---

[1] The Court's background section is taken from Plaintiff's Second Amended Complaint, to which the individual Defendants have not yet filed an answer.

At approximately 7:00 PM on September 15, 2017, Plaintiff went to the Central West End neighborhood of St. Louis City to protest the Stockley acquittal. (*Id.*, ¶ 51). Plaintiff has been an active protester for the Black Lives Matter movement since 2014. (*Id.*, ¶ 52). Plaintiff participated in a march that started in the Central West End. (*Id.*, ¶ 53). Following the march, she observed buses of riot police officers coming in from both directions, and SLMPD officers in riot gear blocking off the intersection at Waterman Boulevard and Lake Avenue. (*Id.* ¶¶ 53-54). Between 9:30 PM and 10:00 PM, Plaintiff entered the Central Reform Congregation, a Synagogue, to avoid tear gas that the SLMPD was indiscriminately firing. (*Id.*, ¶¶ 55-56). She asserts that approximately 100-150 people also sought refuge in the Synagogue, and that while inside, she could hear SLMPD officers banging on the door and yelling. (*Id.*, ¶¶ 57-58). Plaintiff asserts that the Synagogue was surrounded by SLMPD officers, which caused Plaintiff and others to remain in the Synagogue for at least an hour. (*Id.*, ¶ 59).

When the SLMPD officers who had been surrounding the Synagogue dispersed, Plaintiff and approximately ten other protesters exited the Synagogue. (*Id.*, ¶ 61). Plaintiff decided to go home as the protests were over, and attempted to reach her vehicle to leave. (*Id.*). In order to reach her vehicle, which was located at Euclid and Laclede, Plaintiff, along with other individuals, walked south on Kingshighway. (*Id.*, ¶¶ 61-63).. They were approached by a line of SLMPD officers, and Plaintiff sought permission to cross the line of police to reach her vehicle. (*Id.*, ¶¶ 62-63). The police granted Plaintiff and others permission to cross the line, but Plaintiff asserts that as she did so, several officers began to make mocking statements toward her. (*Id.*, ¶¶ 64-65). Before reaching her vehicle, Plaintiff saw an armored SLMPD truck ("BEAR") speed toward where she and others were walking. (*Id.*, ¶ 67). Plaintiff yelled for those with her to take cover, and the armored truck passed Plaintiff once without incident. (*Id..*, ¶¶ 71-73). Plaintiff

and others quickly crossed Lindell to get to their vehicles. (*Id.*, ¶ 74). The BEAR made a U-Turn, however, returned to Plaintiff's location, and began indiscriminately dispersing tear gas. (*Id.*, ¶ 75). Plaintiff asserts that she did not hear a warning at the time the tear gas was being deployed. (*Id.*, ¶ 76). She further asserts that she was not committing any crime, nor was any crime being committed at the time the tear gas was deployed. (*Id.*, ¶¶ 77-78). Plaintiff asserts that she began to feel excruciating pain, her eyes began to burn, mucus ran from her nose, and her breathing became labored, and that these reactions persisted for several months. (*Id.*, ¶ 79). Plaintiff asserts that she suffered from respiratory issues as a result of the tear gassing for approximately six months. (*Id.*, ¶ 85).

On September 30, 2020, Plaintiff filed her Second Amended Complaint in this matter, naming as Defendants the City of St. Louis, Missouri, Cliff Sommer, Nicholas Manasco, Lance Coats, Joshua Becherer, Matt Tesreau, Michael Flatley, Joseph Busso, Jon Long, Timothy Boyce, Bennie Blackmon, Daniel Cora, Joseph Calabro[2], Lt. Col. Lawrence O'Toole, and Director Charlene Deeken.[3] (ECF No. 68). She asserts the following claims for relief: First and Fourteenth Amendment Violations (against Defendant Officers) (Count I); Conspiracy to Deprive Civil Rights (against Defendant Officers) (Count II); 42 U.S.C. § 1983 Municipal Liability *Monell* Claim against Defendant City of St. Louis for Failure to Train, Failure to Discipline, Failure to Supervise, and for a Custom of Conducting Unreasonable Search and Seizures and Use of Excessive Force (Count III); Missouri State Law—Assault (against All Defendants) (Count IV); Missouri State Law—Intentional Infliction of Emotional Distress (against All Defendants) (Count V); Missouri State Law—Negligent Infliction of Emotional

---

[2] Defendants Sommer, Manasco, Coats, Becherer, Tesreau, Flatley, Busso, Long, Boyce, Blackmon, Cora and Calabro are at times referred to as "Defendant Officers."
[3] Each of the individual Defendants is sued in his or her individual capacity.

Distress (against All Defendants) (Count VI); 42 U.S.C. § 1983—Fourth and Fourteenth Amendment: Excessive Force (against Defendant Officers except Defendant Blackmon) (Count VII); 42 U.S.C. § 1983—Fourth and Fourteenth Amendment: Failure to Intervene in Use of Excessive Force (against All Defendant Officers) (Count VIII)[4]; Missouri State Law—Battery (against All Defendants) (Count IX); and Vicarious Liability under City Charter (against Defendants O'Toole and Deeken) (Count X).

As stated above, the individual Defendants filed the instant Motion to Dismiss on March 1, 2021, asserting Plaintiff's Second Amended Complaint must be dismissed for failure to state a claim on which relief can be granted, and because said Defendants (other than Defendants O'Toole and Deeken) are entitled to qualified immunity. (ECF No. 76).

**LEGAL STANDARD**

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim for relief is plausible on its face where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," id., and "raise[s] a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A complaint must offer more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" to state a plausible claim for relief. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

---

[4] Plaintiff concedes that Counts VII and VIII of her Second Amended Complaint were rendered noncognizable by the Eighth Circuit's recent decision in *Quraishi v. St. Charles County, Missouri*, 986 F.3d 831, 841 (8th Cir. 2021). (*See* Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss Second Amended Complaint ("Plaintiff's Opp."), P. 8).

On a motion to dismiss, the Court accepts as true all of the factual allegations contained in the complaint, even if it appears that "actual proof of those facts is improbable," *Twombly*, 550 U.S. at 556, and reviews the complaint to determine whether its allegations show the pleader is entitled to relief.  *Id.* at 555-56; Fed. R. Civ. P. 8(a)(2).   The principle that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  *Iqbal*, 556 U.S. at 678.  Although legal conclusions can provide the framework for a complaint, they must be supported by factual allegations.  *Id.*   Plausibility is assessed by considering only the materials that are "necessarily embraced by the pleadings and exhibits attached to the complaint[.]" *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (quoted case omitted).

## DISCUSSION

### A. Individual Defendants Against Whom No Specific Allegations Are Made

In their Motion to Dismiss, Defendants first assert that Plaintiff's Second Amended Complaint alleges only that Defendants Sommer, Calabro, Cora and Blackmon were in the BEAR at the time the police deployed chemical munitions at Plaintiff.  (Memorandum in Support of Individual Defendants' Motion to Dismiss Second Amended Complaint ("Defendants' Memo in Support"), PP. 4-5).  Defendants thus assert Defendants Manasco, Coats, Becherer, Tesreau, Flatley, Busso, Long and Boyce must be dismissed.  Defendants maintain the following allegations in Plaintiff's Second Amended Complaint support their motion:

> 68.    The City of St. Louis has confirmed that Defendants Cliff Sommer, Joseph Calabro, Daniel Cora, and Bennie Blackmon, Nicholas Manasco, Lance Coats, Joshua Becherer, Matt Tesreau, Michael Flatley, Joseph Busso, Jon Long, and Timothy Boyce were all on duty members of SWAT, and that SWAT team members operated the BEAR from which officers deployed pepper spray at Plaintiff.

> 69.    The City of St. Louis has confirmed that Defendants Cliff Sommer, Joseph Calabro, Daniel Cora, and Bennie Blackmon were in the BEAR at the time that the police deployed chemical munitions at Plaintiff.

> 70. Despite years of investigation, the City of St. Louis is still not able to confirm or deny whether Nicholas Manasco, Lance Coats, Joshua Becherer, Matt Tesreau, Michael Flatley, Joseph Busso, Jon Long, and Timothy Boyce were in the BEAR at the time that SLMPD officers deployed pepper spray at Plaintiff. Plaintiff has repeatedly made efforts to limit the number of defendants in this suit. The City's inability to produce the names of the finite number of officers in the only vehicle firing tear gas canisters during a high-profile event has resulted in these officers being named as defendants. If the City provides a more accurate list, Plaintiff will revise her suit accordingly.

(SAC, ¶¶ 68-70).

The Eighth Circuit instructs that in § 1983 actions, the conduct of each Defendant must be assessed independently. *See Smith v. City of Minneapolis*, 754 F.3d 541, 547 (8th Cir. 2014). While Plaintiff specifically alleges Defendants Sommer, Calabro, Cora and Blackmon were in the BEAR at the relevant time, with respect to the remaining Defendant Officers she alleges only that they were on-duty members of SWAT, and that SWAT team members operated the BEAR at issue. The Court agrees that Defendants Manasco, Coats, Becherer, Tesreau, Flatley, Busso, Long and Boyce cannot be held liable merely because they were members of SWAT on duty the night some members of SWAT may have violated Plaintiff's rights. *See Street v. O'Toole*, No. 4:19CV2590 CDP, 2021 WL 677909, at *4 (E.D. Mo. Feb. 22, 2021) ("[L]iability under § 1983 requires proof of a causal link between *each* defendant and the *specific wrongs* that defendant committed. Put differently, asserting broad, sweeping allegations that a group of defendants committed constitutional misconduct is not sufficient to satisfy plaintiffs' pleading obligations as to each defendant within that group.").

Upon consideration, however, the Court finds this case is distinguishable from *Street*. In that case, the plaintiff named a myriad of SLMPD officers as defendants, but offered specific allegations as to only a handful. In contrast here, Plaintiff details the efforts she has undertaken

to confirm who was on the BEAR the night of the incident. (*See* Plaintiff's Opp., PP. 5-8). After months of discovery, including depositions, video review and discovery conferences, Plaintiff narrowed the search to twelve officers, four of whom purportedly were present on the BEAR, and eight of whom were on duty but whose presence on the BEAR could not be confirmed. Under these circumstance, the Court will allow Plaintiff to proceed with discovery as to Defendants Manasco, Coats, Becherer, Tesreau, Flatley, Busso, Long and Boyce, in an effort to establish their liability or lack thereof. Defendants remain free to renew their arguments for dismissal on summary judgment, when discovery is complete.

    B.    **First Amendment**

In Count I of her Second Amended Complaint, Plaintiff claims Defendant Officers violated her civil rights pursuant to 42 U.S.C. § 1983, when they committed violations of the First Amendment. (SAC, ¶¶ 70-81). Plaintiff alleges in part as follows:

> 71.    Plaintiff has a fundamental right to assemble and express Plaintiff's views protected by the freedom of association and freedom of speech clauses of the First Amendment, as applied to the states under the Fourteenth Amendment to the United States Constitution.
>
> 72.    Defendant Officers' actions violated Plaintiff's rights under the First Amendment to freedom of speech and freedom of assembly by interfering with Plaintiff's ability to associate freely in public and express Plaintiff's views as part of a peaceful demonstration….
>
> 78.    Additionally, Defendant Officers' actions described herein have had a chilling effect on Plaintiff, who is now less likely to participate in free public discourse.

(*Id*., ¶¶ 71-72, 78).

In order to prevail on her First Amendment claim, Plaintiff must show: "(1) [she] engaged in protected activity; (2) [Defendants] caused an injury to [Plaintiff] that would chill a person of ordinary firmness from continuing the activity; (3) and a causal connection between the retaliatory animus and injury." *Quraishi*, 986 F.3d at 837 (citation omitted). To establish the

causal connection, Plaintiff must show that she was singled out due to her exercise of constitutional rights. *Id.*

In her Second Amended Complaint, Plaintiff claims Defendant Officers deployed pepper spray in an effort to interfere with Plaintiff's ability to associate freely in public and express her views as part of a peaceful demonstration. Defendants assert that the undisputed facts demonstrate Plaintiff was not engaging in protected activity at the time of the alleged gassing or spraying. (Defendants' Memo in Support, PP. 3-6). Plaintiff counters that she engaged in protected activity by participating in a protest, and that she has established a causal connection between the gassing and the protected activity because she and others were leaving the immediate vicinity of the protest when officers in the BEAR vehicle targeted her with tear gas. (Plaintiff's Opp., PP. 3-5).[5]

Upon consideration, the Court finds genuine issues of material fact exist with respect to whether Plaintiff was engaged in protected activity at the time of the incident, and whether Defendant Officers' motive in spraying Plaintiff was retaliation for said behavior. *See Peterson v. Kopp*, 754 F.3d 594, 603 (8th Cir. 2014) (holding that the "causal connection", *i.e.*, retaliatory motive, is generally a jury question unless it is so free from doubt as to justify taking it from the jury); *Quraishi*, 986 F.3d at 838 (internal quotation marks and citation omitted) ("[Defendant's] motive is not so free from doubt as to justify taking it from the jury."). As noted by Plaintiff, the proximity in time between the protected activity and the alleged actions of the officers of driving past Plaintiff, turning around, and then targeting her with tear gas, permit the inference of a causal connection between the retaliatory animus and the injury. Defendant Officers therefore

---

5 Plaintiff further maintains that she is a well-known politician and a visible critic of the SLMPD. (Plaintiff's Opp., P. 4).

are not entitled to summary judgment or qualified immunity on Plaintiff's First Amendment claim.[6]

### C. Civil Conspiracy

In Count II of her Second Amended Complaint, Plaintiff asserts a § 1983 claim that Defendant Officers, "acting in their individual capacities and under color of law, conspired together and with others, and reached a mutual understanding to undertake a course of conduct that violated Plaintiff's civil rights." (SAC, ¶ 83).

Defendant Officers move to dismiss Plaintiff's § 1983 conspiracy claim on the basis that it is barred by the intracorporate conspiracy doctrine, or in the alternative, to find that Defendant Officers are entitled to qualified immunity because it is not clearly established that the intracorporate conspiracy doctrine does not apply. The intracorporate conspiracy doctrine provides that "a local government entity cannot conspire with itself through its agents acting within the scope of their employment." *Kelley v. City of Omaha, Neb.*, 813 F.3d 1070, 1078 (8th Cir. 2016) (quoting *L.L. Nelson Enters., Inc. v. County of St. Louis, Mo.*, 673 F.3d 799, 812 (8th Cir. 2012)). The Eighth Circuit has only applied the doctrine to 42 U.S.C. § 1985 claims, however; it has not yet addressed whether the doctrine applies to § 1983 conspiracy claims. This Court previously has declined to apply the doctrine in this case (*see* ECF No. 40, P. 5), and again declines to extend the doctrine's reach in the absence of direction from the Eighth Circuit. Defendant Officers thus are not entitled to dismissal or qualified immunity on Plaintiff's § 1983 conspiracy claim by virtue of the intracorporate conspiracy doctrine.

---

6 Defendant Officers do not argue that the constitutional right at issue was not clearly established at the time of the allegedly offending conduct, and the Court has no problem finding that it was. *See Quraishi*, 986 F.3d at 838; *Hartman v. Moore*, 547 U.S. 250, 256, 126 S.Ct. 1695, 164 L.Ed.2d 441 (2006) ("[T]he law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions….for speaking out.").

### D. Official Immunity

Defendants next assert they are entitled to official immunity from Plaintiff's state law claims. "Under Missouri law, the official immunity doctrine protects public officials from liability for injuries arising out of their discretionary acts or omissions, but not from liability in claims arising from their performance of ministerial acts." *Reasonover v. St. Louis County, Mo.*, 447 F.3d 569, 585 (8th Cir. 2006) (citation omitted). A law enforcement officer's decision to use force in the performance of his duties is discretionary rather than ministerial. *Davis v. White*, 794 F.3d 1008, 1013 (8th Cir. 2015).

"[O]fficial immunity does not apply to discretionary acts done in bad faith or with malice", however. *Davis*, 794 F.3d at 1013 (internal quotation marks and citations omitted). "A finding of malice requires 'conduct which is so reckless or wantonly and willfully in disregard of one's rights that a trier of fact could infer from such conduct bad faith or any improper or wrongful motive.'" *Wealot v. Brooks*, 865 F.3d 1119, 1129 (8th Cir. 2017) (quoting *State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 447 (Mo. 1986) (citation omitted)). "A finding of bad faith embraces more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, or breach of a known duty through some ulterior motive." *Id.* (internal quotation marks and citations omitted).

In their Motion to Dismiss, Defendants argue that Plaintiff cannot show Defendants' actions were undertaken in bad faith or with malice. The Court finds that Plaintiff's allegations are sufficient to survive Defendants' motion, however. In other words, "[t]he allegedly unnecessary use of force against non-resisting individuals, such as plaintiff, the inflammatory and disparaging remarks made by SLMPD officers before, during, and after the incident, and the comparison between SLMPD's response to the Stockley protests and other protests not related to

police misconduct may reasonably support a finding of malice or bad faith." *Newbold v. City of St. Louis, Mo.*, No. 4:18CV1572 HEA, 2021 WL 4061066, at *10 (E.D. Mo. Sep. 7, 2021). Official immunity thus is not appropriate at this stage of the litigation, and Defendants' Motion to Dismiss on that basis will be denied.

E. **Intentional and Negligent Infliction Of Emotional Distress**

Plaintiff alleges a claim for intentional infliction of emotional distress in Count V, and negligent infliction of emotional distress in Count VI against all Defendants. Defendants assert the Court must dismiss these counts because they are "simply repackaged assault claims," citing to *State ex rel. Halsey v. Phillips*, 576 S.W.3d 177 (Mo. banc 2019) and *Sansonetti v. City of St. Joseph*, 976 S.W.2d 572, 580 (Mo. App. 1998). (Defendants' Memo in Support, PP. 13-14). The Missouri Supreme Court, in *Halsey*, recited the general rule that "[w]here a defendant's conduct amounts to the commission of one of the traditional torts…and the conduct was not intended only to cause extreme emotional distress to the victim, the tort of intentional emotional distress will not lie, and recovery must be had under the appropriate traditional common-law action." 576 S.W.3d at 181 (quoting *K.G. v. R.T.R.*, 918 S.W.2d 795, 799 (Mo. 1996)). This rule only applies to the tort of intentional infliction of emotional distress, not negligent infliction of emotional distress. *Id.* Thus, Plaintiff's claim of negligent infliction of emotional distress may proceed. *See Street*, 2021 WL 677909, at *11 ("[P]laintiffs only allege a *negligent* infliction claim, so *K.G.* and *Halsey* do not bar this claim.").

The Court need not dismiss Plaintiff's intentional infliction of emotional distress claim either, however. While she cannot proceed to judgment on all of her claims for assault, battery, and intentional infliction of emotional distress when they are all based on the same underlying conduct, at this stage of the case, she may assert alternative theories of recovery. *See* Fed. R.

Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."). Therefore, at this point the Court will not dismiss the claim of intentional infliction of emotional distress, with the understanding that at some point Plaintiff may need to choose between her competing claims.

F. **Vicarious Liability Under The City's Charter**

In Count X, Plaintiff asserts a novel theory of liability. She alleges that Lt. Col. O'Toole and Charlene Deeken are vicariously liable under the City's Charter. According to Plaintiff, Article VIII, Section 5 of the Charter states, "[e]ach head of a department, office or division shall be responsible for the acts or omissions of officers and employees appointed by him, and may require bonds or other securities from them to secure himself." (SAC, ¶ 156). Plaintiff alleges O'Toole and Deeken were officers and employees of the Director of Public Safety and Chief of Police, and were acting in the scope of their employment when they committed the acts alleged in the Second Amended Complaint. (*Id.*, ¶¶ 157-158). Defendants ask that the Court decline supplemental jurisdiction, and the Judges in *Street* and *Newbold* agreed to do so.

Under 28 U.S.C. § 1367(c)(1), the Court may decline supplemental jurisdiction over a claim that raises a novel or complex issue of State law. The undersigned agrees with Judges Perry and Autrey that supplemental jurisdiction should be declined with regard to this novel and complex issue of State law.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that the Motion to Dismiss of Individual Defendants (ECF No. 76) is **GRANTED in part** and **DENIED in part**, in accordance with the foregoing.

Dated this   31st    Day of January, 2022.

\s\ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE